UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GORDON ADAMS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:02-0469 |
| ) | Judge Nixon |
| JO ANNE BARNHART ) | Magistrate Judge Knowles |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Pending before the Court are Plaintiff's and Defendant's Cross-Motions for Judgment on the Administrative Record. (Doc. No. 11 and No. 13.) Magistrate Judge Knowles issued a Report and Recommendation ("Report") recommending that the Court grant the Defendant's motion. (Doc. No. 18.) No objections were filed and the Court issued an Order adopting the Report in its entirety. (Doc. No. 19.) However, Plaintiff subsequently petitioned the Court to reconsider and the Court granted said motion. (Doc. No. 21 and 22.) Plaintiff then filed Objections to the Report. (Doc. No. 23.) Upon review of the Magistrate Judge's Report and for the reasons stated below, the Court ADOPTS the Magistrate Judge's Report in its entirety, GRANTS Defendant's Motion for Judgment Based upon the Administrative Record, and DENIES Plaintiff's Motion for Judgment on the Administrative Record.

I. BACKGROUND

A. Procedural Background

Gordon Adams ("Adams" or "Plaintiff") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 5, 1996, alleging that he had been disabled since January 31, 1996, due to problems with his back, knees, eyes, and diabetes. (Doc. No. 7, Attachment (TR) 93; 145-148; 328-330. Both applications were denied

initially (TR 92-93; 331) and upon reconsideration (TR 94-95; 338-339). Plaintiff subsequently requested (TR 119) and received (TR 56-91) a hearing. Plaintiff's hearing was conducted on April 2, 1998, by Administrative Law Judge ("ALJ") John P. Garner. (TR 56-91.) Plaintiff and vocational expert ("VE") Gina Thomas appeared and testified. (TR 57.) Also present was Plaintiff's attorney, Phillip A. George. (TR 58.) On August 7, 1998, the ALJ issued a decision unfavorable to the Plaintiff, finding that the Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. (TR 96-105.)

On August 26, 1999, Plaintiff timely filed a request for review of the hearing decision. (TR 131.) The Appeals Council issued a letter remanding the case to the ALJ to review the case on May 3, 2000. (TR 137-139.) Plaintiff's second hearing was conducted on September 14, 2000 by ALJ Robert C. Haynes. (TR 25-55.) Plaintiff and another VE, Lisa A. Courtney, appeared and testified. (TR 26.) Also present was Plaintiff's attorney, Phillip A. George. (TR 27.) The ALJ issued a decision unfavorable to Plaintiff on October 31, 2001, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. (TR 13-22.)

On December 12, 2001, Plaintiff timely filed a request for review of the hearing decision. (TR 10-12.) The Appeals Council issued a letter declining to review the case (TR 8-9) on March 6, 2002, thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed (Doc. No. 1 at 1), and the Court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). The Court referred this matter to Magistrate Judge Knowles who, in his Report dated April 13, 2006, recommended that Plaintiff's motion be denied. (Doc. No. 18 at 1.) Plaintiff asserts two objections to the Magistrate Judge's findings. (Doc. No. 34 at 1-2.) First, Plaintiff asserts that the jobs identified by the VE are inappropriate for the Plaintiff

because the Court should not have found that the Plaintiff can perform medium work. (Doc. No. 34 at 1.) As a result, Plaintiff also objects that the VE is unreliable and the Court should not have found that there were a significant number of jobs available to the Plaintiff. (Doc. No. 34 at 2.)

### B. Factual Background

The period for which the Plaintiff is asking for DBI and SSI runs from the alleged date of disability onset, January 31, 1996, through April 30, 1999. (TR 17.) The Plaintiff, as a result of a subsequent application, was found disabled and eligible for SSI commencing May of 1999. (Id.) Mr. Adams was insured for Title II disability insurance benefits from July through September, 1996. In order to qualify for these benefits, the date of disability must be established prior to or on September 30, 1996. (Id.)

The evidence indicates that Mr. Adams has a history of back problems. He injured his back while on-the-job in 1985, and underwent surgery in September 1990. (TR 310.) Dr. Collis was the attending physician. Dr. Collis reported in November, 1990 that the Plaintiff's progress since surgery was "quite satisfactory" and that Plaintiff's incision had healed well, and his disc replacement was "in good alignment." (TR 246.) Dr. Collis told Plaintiff that he "may plan to get back to your regular work on 4-1-91." (Id.) Upon follow-up examination in March, 1991, Dr. Collis reported that Plaintiff's neurological examination was "stable," that Plaintiff's x-rays showed "excellent progress," and that he recommended simple stretching exercises and an exercycle to the Plaintiff. (TR 245.) Following back surgery, Plaintiff returned to work and attended training in electronics. (TR 17.)

In March, 1994, Dr. Finneran examined Plaintiff. (TR 252.) Plaintiff's chief complaint was a "[h]istorical injury to the lumbar spine." (Id.) Dr. Finneran reported that Plaintiff had

3

been seeing Dr. Knight monthly since seeing Dr. Collis. (Id.) Dr. Finneran stated that Plaintiff presently had twenty-four percent whole body permanent partial impairment. (Id.)

In June 1996, Plaintiff underwent irrigation and debridgement of the right prepatellar bursa, due to an infection in the knee. (TR 255-257; 416-417.) By July, 1996, two doctors who independently examined the Plaintiff, Dr. Ebraheim and Dr. Georgiadis, reported that Mr. Adams was without complaint and doing well. (TR 265-266.) He had a good range of motion with full extension and was neurovascularly intact, bilaterally. (Id.)

However, In December, 1996, Dr. Knight wrote a letter to the State of Tennessee Department of Human Services Disability Determination Section saying that Adams should be considered permanently disabled.[1] (TR 275.) Unfortunately, there is no documentation in the record of recent examinations to show why Dr. Knight wrote this letter. Dr. Knight wrote another (undated) letter to attorney William R. Polhamus. (TR 276.) This letter said that the Plaintiff had constant and recurring pain involving the lower back that limited his ability to work and live a normal life. (Id.) Dr. Knight also claimed that Plaintiff's symptoms were a direct cause of his work related injuries, and that the problem would continue to haunt him, and that his medical treatment should therefore be paid for by the Bureau of Workmen's Compensation. (Id.) Again, there is no documentation in the record of a recent medical visit upon which Dr. Knight based these claims.

Dr. Bruce Davis performed an "All Systems Exam" of Plaintiff on January 15, 1997, three and a half months after the date before which disability must have been established. (TR 279-281.) Dr. Davis noted that the Plaintiff had chronic overweight condition, had a two year history of elevated blood sugar, that Plaintiff complained of lower left back pain, swelling

---

[1] Plaintiff also claims to have seen Dr. Kim monthly between his back surgery and his appointment with Dr. Finneran. TR 252.

4

aggravated by activity and position, and left leg shooting pain. (Id.) In addition, Dr. Davis noted that Plaintiff had contracted a right knee infection after injury, had undergone surgery, and had pain, swelling and unsteadiness. (Id.) The notes indicate that Plaintiff's treatment included rub, ice, elastic support, home stretching exercises, medication, occasional use of a cane, and physician visits. (Id.) Dr. Davis noted that Plaintiff had full range of motion in his back, that Plaintiff had reduced leg sensation, that Plaintiff's straight leg raise was limited to 45 degrees, that Plaintiff's hip flexion was 90 degrees, and that Plaintiff had "full motion" in his right knee. (TR 280.)

Dr. Davis' diagnoses were "Grade 2 Obesity," "Non-insulin-dependent diabetes mellitus," "Musculoskeletal disease: back injury/surgery, knee injury/surgery," "Bilateral cataract surgery," and "Hypertension." (TR 281.) Dr. Davis opined that Plaintiff's clinical conditions were "chronic" and unlikely to improve with active treatment. (Id.) Dr. Davis also opined that Plaintiff could occasionally lift and/or carry "< 50 pounds" and frequently lift and/or carry "< 25 pounds," stand and/or walk for less than six hours in an eight-hour workday, and sit for eight hours in an eight-hour workday. (Id.) Dr. Davis stated that Plaintiff's limitations were "limited squatting" and "limited climbing/heights." (Id.)

Dr. Louise Patikas completed a Residual Functional Capacity assessment of Plaintiff on January 27, 1997, twelve days after Dr. Davis's examination. (TR 281-289.) Dr. Patikas's findings were similar to Dr. Davis's. Dr. Patikas opined that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push and pull without limitation. (TR 283.) Dr. Patikas further opined that Plaintiff could "frequently"

5

climb, balance, stoop, kneel, crouch, and crawl. (TR 284.) No manipulative, visual, communicative, or environmental limitations were noted. (TR 285-286.)

## II. STANDARD OF REVIEW

The Court's review of the portions of the Report to which Plaintiff objects is de novo. 28 U.S.C. § 636(b). The Court's review is limited to "a determination of whether substantial evidence exists in the record to support the Secretary's decision and to a review for any legal errors." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, an ALJ's decision will be upheld if it is supported by substantial evidence. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

Even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. Her v. Commissioner, 203 F.3d 388, 389 (6th Cir. 1999) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education and work experience. Miracle v. Celebrezze, 351 F.2d 361, 374 (6th Cir. 1965).

6

## III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

### A. Plaintiff Objects to the Magistrate Judge's Finding That There Is Substantial Evidence To Support The ALJ's Determination That The Jobs Identified By The VE Are Appropriate For The Plaintiff Because He Can Perform Medium Work

Upon review of the record, the Court finds that there is substantial evidence to support the finding that the Plaintiff can perform medium work. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567. The Plaintiff objects to the magistrate's finding that the Plaintiff can carry "up to 25 pounds," in satisfaction of the medium work requirements. (Doc. No. 18 at 12, Doc. No. 23 at 2.) He posits that he can only carry "less than" 25 pounds, which does not satisfy the criteria for medium work. (Doc. No. 23 at 2.) However, Dr. Bruce Davis's report states under "Lifting/carrying maximum weight limits" that the Plaintiff could frequently lift "< 25 lbs." (TR 281.) Dr. Patikas's report marks 25 pounds as the maximum amount that the Plaintiff could carry frequently. (TR 283.) In combination, these two reports provide substantial evidence in support of the finding that the Plaintiff was able to perform medium work.[2]

### B. Plaintiff Objects To Magistrate Judge's Finding That There Is Substantial Evidence To Support The ALJ's Determination That There Were A Significant Number Of Jobs Available To The Plaintiff

The Plaintiff protests that the ALJ did not correctly examine all the factors listed in Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988), before determining that the number of jobs determined as available by the VE was significant. In particular, the Plaintiff objects that the ALJ did not sufficiently consider the credibility of the VE before deciding that the 2,600 jobs recommended by her were a significant number. (Doc. No. 23 at 1.) Hall cautions that there are a number of

---

[2] Even if Dr. Davis meant "less than 25 pounds," as Plaintiff purports, and Plaintiff does not qualify for full range medium-level work, the grid was properly used by the ALJ as a framework to identify jobs within a limited medium-work capability. If an individual's specific profile is not listed in the grid of Appendix 2, the rules "still provide guidance for decision-making," and the grid provides the adjudicator with a frame of reference. 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(d). The ALJ properly used the grid to approximate the Plaintiff's work ability as limited range medium work.

7

factors to be considered before concluding that the number of jobs identified by the VE is sufficient. The Hall factors include: "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work." Hall, 837 F.2d at 275.

The ALJ found the VE to be reliable, and the Court finds that there is substantial evidence to support that finding. Plaintiff believes the VE to be unreliable because Plaintiff claims the VE inappropriately recommended medium-level jobs. (Doc. No. 23 at 2.) However, as the Court has found that the Plaintiff was sufficiently capable of performing medium-level jobs, this recommendation does not diminish the reliability of the VE. Moreover, the ALJ did not find the Plaintiff credible. (TR 21.) The VE testified that if the Plaintiff's testimony was credible, he would be unable to perform any work. (TR 51-52.) The ALJ's determination the Plaintiff was capable of medium work shows that he based his decision on the testimony of the VE, whose opinion he must have credited over the witness'. (TR 21.) As the ALJ's credibility findings "are entitled to deference because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints," the Court must defer to these findings. Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001). Because the Court does not believe that the VE incorrectly recommended the medium-level jobs, it finds no reason to question the ALJ's determination that the VE was reliable.

The Court finds that the VE was reliable. It also finds that the ALJ addressed the Hall factors sufficiently before determining that the number of jobs identified for the Plaintiff was significant. The VE estimated that 2,600 jobs were available to the Plaintiff. This number is greater than the 1,350 recommended by Hall as a significant number of jobs, so the ALJ did not

err in finding that there were a significant number of jobs available to the Plaintiff at the medium level of work. Hall, 837 F.2d at 275.

## IV. CONCLUSION

For the reasons stated above, the Court finds the Magistrate Judge's Report is well-founded and supported by the record, and therefore ADOPTS it in its entirety. Accordingly, Plaintiff's Motion for Judgment Upon the Administrative Record is DENIED and the Defendant's Motion for Judgment Based Upon the Administrative Record is GRANTED.

It is so ORDERED.

Entered this the 21st day of July, 2006.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT